Brian K. Brookey, CA SBN 149522
HONIGMAN LLP
1440 New York Ave NW
Suite 200
Washington, DC 20005-2111
Telephone: 202-521-0556

Aaron D. Bray, CA SBN 327771
321 N. Clark St.
Suite 500
Chicago, IL 60654-4769
Telephone: 312-701-9300

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

|  |  |
|---|---|
| EMPOWER TRIBE COMMERCIAL FZE, a Dubai company, and EMPOWER TRIBE IP HOLDINGS LTD., an Abu Dhabi company, <br><br>              Plaintiffs, <br><br>      v. <br><br> ROLAND CORPORATION, a Japanese corporation, and ROLAND CORPORATION U.S., a Delaware corporation, <br><br>              Defendants. | Case No. 2:25-cv-09658-SPG-JC <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> **Date: February 25, 2026** <br> **Time: 1:30 p.m.** <br> **Ctrm: 5C** <br><br> **Hon. Sherilyn Peace Garnett** |

# <u>TABLE OF CONTENTS</u>

Table of Contents...........................................................................................i

Table of Authorities .....................................................................................ii

I.    INTRODUCTION.................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND....................................2

III.  LEGAL STANDARD .............................................................................6

    A.    Patent Eligibility Standards Under Section 101 ...................................6

    B.    Rule 12(b)(6) Standards Applicable to Motions to Dismiss Under
        Section 101 for Patent-Ineligible Subject Matter ..................................6

IV.   ARGUMENT ........................................................................................7

    A.    Defendants Fail to Show by Clear and Convincing Evidence That the
        '683 Patent is Invalid Under Section 101. ...............................................7

        1.   *Alice* Step 1: Claims 1 and 30 are directed to an improved musical
            instrument tuner. ...................................................................................7

        2.   *Alice* Step 2: The claims recite an inventive concept in the limitations,
            both individually and as a combination. ..................................................15

    B.    Plaintiffs Have Adequately Pled Indirect Infringement. .....................19

        1.  Plaintiffs have adequately pled induced infringement.........................19

        2.  Plaintiffs have adequately pled contributory infringement. ................21

V.    DEFENDANTS' MOTION MAY BE DENIED, IN WHOLE OR IN PART,
    FOR THEIR VIOLATIONS OF LOCAL RULE 7-3 AND OF THIS
    COURT'S STANDING ORDER.................................................................22

VI.   CONCLUSION ......................................................................................23

i

63656551

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ....................................................................6, 7, 18

*AlexSam, Inc. v. Aetna, Inc.*,
  119 F.4th 27 (Fed. Cir. 2024) ...........................................................................19, 21

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)........................................................................................*passim*

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ..............................................................................16

*Baxter Int'l, Inc. v. Carefusion Corp.*,
  No. 15-cv-09986-AJSE, 2016 WL 2770787 (N.D. Ill. May 13, 2016)................12

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................................................7

*Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*,
  998 F.3d 1320 (Fed. Cir. 2021) .............................................................................21

*Carbon Autonomous Robotic Sys. Inc. v. Laudando & Assocs. LLC*,
  No. 2:24-CV-03012-DAD-JDP, 2025 WL 1678438
  (E.D. Cal. June 12, 2025) ...............................................................................11, 14

*Cardiacsense Ltd. v. Coros Wearables, Inc.*,
  No. 2:24-CV-11011-MCS-AS, 2025 WL 2630224
  (C.D. Cal. Apr. 23, 2025)..............................................................................13, 14

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020) .................................................................6, 12, 13

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) .........................................................................6, 10

*Chubb Custom Inc. v. Space Sys./Loral, Inc.*,
  710 F.3d 946 (9th Cir. 2013) ..........................................................................7, 20

ii

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015)..........................................................................................21

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ...................................................................6

*DeSoto v. Yellow Freight System, Inc.*,
  957 F.2d 655 (9th Cir. 1992) .........................................................19, 22

*Diamond v. Diehr*,
  450 U.S. 175 (1981)...............................................................................11, 12

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) ................................................14, 15

*EcoServices, LLC v. Certified Aviation Serv., LLC*,
  830 F. App'x 634 (Fed. Cir. 2020) .......................................................14

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .....................................................12, 13

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ...............................................................7

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ....................................................14, 15

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
  50 F.4th 1371 (Fed. Cir. 2022) ..............................................................6

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ...........................................................19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) .............................................................6

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
  223 F. Supp. 3d 1026 (C.D. Cal. 2016) ...........................................11

iii

*PowerBlock Holdings, Inc. v. iFit, Inc.*,
   146 F.4th 1366 (Fed. Cir. 2025) ........................................................................*passim*

*Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*,
   No. 2022-1468, 2023 WL 193162 (Fed. Cir. Jan. 17, 2023) ..................................14

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ............................................................................17

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) ................................................................................7

**Statutes**

35 U.S.C. § 101 ......................................................................................................*passim*

35 U.S.C. § 102 ..............................................................................................11, 12, 15

35 U.S.C. § 103 ..............................................................................................11, 12, 15

35 U.S.C. § 271(c) ......................................................................................................20

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................6, 7

**Other Authorities**

L.R. 7-3 ........................................................................................................1, 22, 23

L.R. 7-4 ......................................................................................................................23

L.R. 11-5.2 ....................................................................................................................9

L.R. 11-5.3 ....................................................................................................................9

L.R. 11-6 ..............................................................................................................22, 23

iv

## I.    **INTRODUCTION**

A patent is presumed valid, and invalidity only may be established by clear and convincing evidence. Defendants do not even mention, much less try to carry, their heavy burden of proving that U.S. Patent No. 8,338,683 (the "'683 Patent") is invalid. Nor could they if they did try.

At *Alice* step one, Defendants vastly oversimplify the invention claimed by the '683 Patent. They gloss over the fact that the patent discloses a sophisticated tuning architecture that determines whether guitar strings are in tune. They disregard the claims as a whole, picking and choosing elements they claim are well-known in the prior art or are nothing more than abstract ideas while ignoring the overall invention. This argument cannot withstand Federal Circuit precedent that forbids in dissecting patent claims in this manner. To the contrary, the Section 101 inquiry looks at the claims *taken as a whole*—something Defendants do not attempt to do.

At *Alice* step two, Defendants raise numerous factual issues regarding whether claimed elements are commonplace, rendering their defense inappropriate for resolution at the pleading stage. They fail utterly in carrying their heavy burden of proving invalidity, especially on a motion to dismiss.

As for the alleged pleading defects, the Complaint sets forth claims for, among other things, induced and contributory infringement. To the extent Defendants believe there are defects, they were free to raise them during counsel's purported Local Rule 7-3 conference; if Defendants had been persuasive, Plaintiffs could have agreed to amend the Complaint. But that conference was limited to a discussion of patent validity. By failing to comply with rules that this Court strictly enforces, Defendants have waived their technical pleading argument—which has no merit in any event. Defendants' motion also is subject to summary denial based on their failure to submit the required declaration supporting their contention that a proper Rule 7-3 conference took place at all.

1

63656551

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Empower Tribe Commercial FZE and Empower Tribe IP Holdings Ltd. (collectively, "Empower") assert that Defendants Roland Corporation and Roland Corporation U.S. willfully infringe at least the following two claims of the '683 Patent:

**Claim 1**

1. A method for operating a musical instrument tuner, the tuner comprising

an input module,

a signal analyzer,

a display,

a housing,

a user interface,

the input module, the signal analyzer and the display forming a part of said
      housing or being comprised in said housing,

the input module receiving an input signal from a musical instrument,

the user interface comprising a mode selector,

the display enabling at least two display modes from a group of display modes,
      the display modes comprising monophonic display mode and
      polyphonic display mode,

the method comprising the steps of
      initiating a user session mode
      the user session mode being selected among a set of user session modes,
      the set of user session modes comprising a polyphonic mode and a
            monophonic mode,
      the method further comprising the step of shifting the session mode from
            one of the previously selected user session modes to another user

2

63656551

1    session mode in response to an input established by a user by

2    means of said mode selector,

3    when the user session mode is selected to be the polyphonic mode,

4    establishing a polyphonic characteristic of the input signal, the

5    polyphonic characteristic including representations of multiple

6    pitch frequencies derived from said input signal, and displaying

7    said polyphonic characteristic in the polyphonic display mode on

8    said display,

9    when the user session mode is selected to be the monophonic mode,

10    establishing a monophonic characteristic of the input signal, the

11    monophonic characteristic including a representation of a pitch

12    frequency derived from said input signal, and displaying said

13    monophonic characteristic in the monophonic display mode on

14    said display;

15    wherein the representation of a pitch frequency is different in the

16    monophonic display mode than in the polyphonic display mode.

17    **<u>Claim 30</u>**

18    30. A musical instrument tuner comprising

19    an input module arranged to receive an input signal from a musical

20    instrument,

21    a signal analyzer,

22    a display arranged to enable at least two display modes from a group of

23    display modes, the display modes comprising monophonic display

24    mode and polyphonic display mode,

25    a housing,

26    a user interface comprising a mode selector,

27    wherein the input module, the signal analyzer and the display is arranged to

28

3

form a part of said housing or being comprised in said housing,

wherein said mode selector is arranged to allow selection of a user session mode of said musical instrument tuner among a set of user session modes, the user session modes comprising a polyphonic mode and a monophonic mode,

wherein said signal analyzer is arranged to establish one or more characteristics of said input signal in accordance with a selected user session mode, and

wherein the display is arranged to convey information about said characteristics in accordance with a display mode selected according to said selected user session mode;

wherein the representation of a pitch frequency is different in the monophonic display mode than in the polyphonic display mode.

The '683 Patent claims an electromechanical tuning device for musical instruments, including guitars. ('683 Patent, 1:14-15; *see also* ECF No. 1 ¶ 11.) The patent solved specific technical problems in musical instrument tuners that were present in the prior part. For example, some tuners could only "measure one pitch frequency at a time." ('683 Patent, 1:24-25.) Such monophonic tuners, if fed "two pitch frequencies simultaneously," would fail to detect a "valid input." (*Id.*, 1:26-29.)

Monophonic, or single string, tuning requires that each string be plucked in sequence. (*Id.*, 1:37-43.) This causes problems because "[i]n many guitars adjusting the tuning of one string influences the tuning of the other strings." (*Id.*, 1:50-51.) In contrast, polyphonic tuning, or tuning multiple strings simultaneously, permits "the tuning of all six strings" at the same time. (*Id.*, 1:57-59; *see also* 11:51-60.)

The '683 Patent claims a solution that permits a "guitar to be tuned easily by strumming/playing the strings simultaneously, and also facilitates precision tuning of individual strings." (*Id.*, 2:41-44.) It does so by claiming a new and improved tuner

4

that is physically capable of "simultaneous pitch frequency determination of several strings" via "a single audio channel." (*Id.*, 2:46-49.) And it does so while providing "sensible/usable information" for both "monophonic and polyphonic signals." (*Id.*, 2:51-53.)

A musician using the claimed tuner thus has the benefit of being able to switch between monophonic mode when he or she needs to tune only one string, and polyphonic mode when needing to tune two or more strings at the same time. (*Id.*, 3:42-48; *see also* Fig. 1 (below; showing an embodiment of the "musical instrument tuner" (MIT) equipped with a "mode selector").



Fig. 1

Not only is the musical instrument tuner capable of detecting and analyzing both monophonic and polyphonic signals, but depending on mode, the invention makes the best use of the limited display available on the physical device. For example, Figures 4 and 10 show different ways of providing monophonic tuning information, while Figures 6 and 12 show different ways of polyphonic tuning information. (*Id.*, FIGs. 4, 6, 10, 12.)



5

## III.   LEGAL STANDARD

### A. <u>Patent Eligibility Standards Under Section 101</u>

Patent eligibility is analyzed under the two-step test established by *Alice Corp. Pty Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022).

At step one, courts "determine whether the claim at issue is 'directed to' a judicial exception, such as an abstract idea." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 218). Courts "consider the claims 'in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.'" *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020) (quoting *McRO*, 837 F.3d at 1312). Beyond the claims themselves, courts consider the specification, which assists in "illuminating what a claim is 'directed to.'" *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) (citation omitted). "If the claims are not directed to a patent-ineligible concept under *Alice* step 1, 'the claims satisfy § 101 and [courts] need not proceed to the second step.'" *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018) (citation omitted).

At step two, courts "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *PowerBlock Holdings, Inc. v. iFit, Inc.*, 146 F.4th 1366, 1371 (Fed. Cir. 2025) (citation omitted).

### B. <u>Rule 12(b)(6) Standards Applicable to Motions to Dismiss Under Section 101 for Patent-Ineligible Subject Matter</u>

Although patent eligibility under Section 101 can be resolved under Rule 12(b)(6), "[t]his is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir.

6

2018). The Federal Circuit has repeatedly explained that "plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record ... refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (citation omitted) (alterations in original). So too can unresolved claim construction issues. *See Aatrix*, 882 F.3d at 1125 (expressing doubt that the district court should have granted the Rule 12(b)(6) motion without claim construction, and vacating on *de novo* review).

Motions to dismiss patent infringement allegations under Rule 12(b)(6) are reviewed by the Federal Circuit under the law of the regional circuit. *Yu v. Apple Inc.*, 1 F.4th 1040, 1042 (Fed. Cir. 2021). Thus, for purposes of this motion, as it would for any Rule 12(b)(6) motion, the court "accept[s] all material allegations in the Complaint as true, and construe[s] them in the light most favorable to the non-moving party." *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Importantly, in *Alice* step 2, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact . . . that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Aatrix*, 882 F.3d at 1126 (allegations may raise factual disputes regarding the inventive concept).

## IV.   ARGUMENT

### A. <u>Defendants Fail to Show by Clear and Convincing Evidence That the '683 Patent is Invalid Under Section 101.</u>

#### 1. *Alice* Step 1: Claims 1 and 30 are directed to an improved musical instrument tuner.

Defendants argue that claims 1 and 30 of the '683 Patent are directed to an abstract idea, focusing on a simplistic description of the display function while

7

63656551

ignoring the invented tuner's capabilities. Considering the claims in their entirety and their character as a whole, in light of the detailed specification, the claims are directed to an improved musical instrument tuner and a method for using one.

Considering the musical instrument tuner itself, Claim 30 requires a device comprising at least five components: (1) "an input module arranged to receive an input signal from a musical instrument," (2) "a signal analyzer," (3) "a display arranged to enable at least . . . monophonic display mode and polyphonic display mode, (4) a housing, and (5) a user interface comprising a mode selector. The claim then requires five additional limitations, specifying the precise arrangement and capabilities of the physical device, including that both the signal analysis and the display be mode-dependent. (*Supra* Section II.) So too does the method claim. (*Id.*) Defendants' argument that the device is merely an "abstract idea" is meritless.

*First*, Defendants argue that the asserted claims of the '683 Patent are directed to "the abstract concept of collecting, analyzing, and displaying data." (ECF No. 22 at 8:7-9.) They further contend that the claims focus on "receiving an input signal from a musical instrument, analyzing the signal, and displaying the results in a monophonic or polyphonic mode." (*Id.*) But Defendants' argument is overly reductive and unpersuasive. Section 101 expressly provides that "[w]hoever invents or discovers any new and useful process, ***machine***, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor[.]" 35 U.S.C. § 101 (emphasis added). A musical instrument tuner is a machine. And the claimed invention does not simply "collect" and "display" data that already exist. It performs the tuning function first, as recited in detail in the patent claims and specification, and then differentially displays the results either monophonically or polyphonically, depending on the selected mode. As noted, the claims require numerous physical components, such as a housing, an input model, a signal analyzer, a display, and a mode selector, arranged in a configuration

8

disclosed and claimed by the '683 Patent. The invention is much more than just a "display," and certainly it is not an abstract idea.

Defendants claim that the '683 Patent stated that "tuners which measure one or more frequencies and display the results in monophonic and polyphonic modes were well-known in the prior art." (ECF No. 22 at 2:5-7 (citing '683 Patent, 1:19-2:40)). That language does not appear in the cited sections of the specification. To the contrary, the specification distinguishes over certain prior art, tuners that do not include all of the '683 Patent's claimed features. For example, some "systems may work only for a single string at a time, where others may work on all strings simultaneously." ('683 Patent, 2:10-12.) In any case, the '683 Patent's relationship with any alleged  prior art is not relevant in determining, at stage one, whether the patent is directed to an abstract idea and thus whether it claims patent-eligible subject matter. Moreover, Defendants, as discussed further below, conflate the *Alice* patent eligibility inquiry with the anticipation or obviousness inquiries.

Nor is the cited prosecution history[1] relevant. Defendants' characterization of applicants as "admitting" the scope of the invention or the use of conventional items is incorrect. (*See* ECF No. 22 at 2:7-21 (citing ECF No 22-1, Ex. A at Page ID #:166-167, 174, 178, 181).) There was no admission; rather, the inventors amended their application in a manner the Examiner had agreed would overcome the outstanding obviousness rejection. (ECF No. 22-1, Ex. A at Page ID #:170, 182.) The '683 patent and its prosecution history reinforce that the prior art, even if relevant, ***did not*** disclose the invented tuner, considered as a whole, with mode-dependent selection and tuning and differential displays between the two modes. (*See* ECF No. 22-1, Ex. A at Page ID #:170, 182.)

*PowerBlock* is instructive. There, the Federal Circuit overturned the district

---

[1] Empower does not object to the Court taking judicial notice of the portions of the prosecution history Defendants filed at ECF No. 22-1, even though Defendants' submission violates Local Rules 11-5.2 and 11-5.3.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

court's *Alice* step one analysis that erroneously held that "a particular type of dumbbell" was "directed to the abstract idea of automated weight stacking[.]" *PowerBlock*, 146 F.4th at 1371. In doing so, it reasoned that:

> Claim 1 is limited to a particular type of dumbbell: a selectorized dumbbell with a stack of nested left weight plates, a stack of nested right weight plates, a handle, and a movable selector with different adjustment positions, where moving the selector to different adjustment positions changes the number of left and right weight plates coupled to the dumbbell. In addition, the claim recites that an electric motor is "operatively connected to the selector" and physically moves the selector into the different adjustment positions corresponding to the desired weight selected by a user.

*Id.* at 1372.

The Federal Court explained that Claim 1 was "'limited to a specific implementation of a technological improvement to' selectorized dumbbells." *Id.* (quoting *Chamberlain*, 935 F.3d at 1347). It held that "the limitations in this claim provide enough specificity and structure to satisfy § 101." *Id.*

So too here. The ample "specificity and structure" in Claim 30 (as well as method Claim 1, which requires the same specificity and structure as the apparatus) is more than sufficient to permit the claimed musical instrument tuner to survive a Section 101 challenge. The asserted claims are limited to a specific implementation of a technological improvement to prior-art tuning devices—not an abstract idea. The specification identifies a specific problem—tuning guitar strings simultaneously and displaying the results accurately in different modes—and recites specific physical architecture for achieving this result. And Defendants'

10

arguments to the contrary depend on construing the claims and the improvements the patent discloses—before claim construction has occurred.

**Second**, Defendants' related argument—that a court should ignore, at *Alice* step 1, any supposedly conventional components (*see, e.g.*, ECF No. 22 at 2:5-3:2, 9:17-25, 8:17-20, 10:4-27)—fares even worse. In doing so, Defendants improperly drag *Alice* step 2 into the step 1 analysis. For example, Defendants argue that the "user interface [comprising a mode selector]" simply "allows the user to select whether the data is [*sic*] analyzed under well-understood, routine, and conventional monophonic or polyphonic conditions." (ECF No. 22 at 9:22-23.) In doing so, Defendants (i) seek to recast every structural element as an abstract idea, while (ii) simultaneously arguing that anything allegedly in the prior art should not count.

Neither of these tactics is proper. One, conventional structures are not abstract ideas simply because the structures can perform tasks that could be characterized as abstract. *See, e.g.*, *Carbon Autonomous Robotic Sys. Inc. v. Laudando & Assocs. LLC*, No. 2:24-CV-03012-DAD-JDP, 2025 WL 1678438, at *10 (E.D. Cal. June 12, 2025) (at the preliminary injunction stage, holding that claims directed to a "laser weeder" were not directed to the abstract idea of classifying plants as weeds, but to a physical system whose combination of tangible elements created a technical improvement in weed killing systems) ("Because claim 1 discloses a physical apparatus, it is not merely reciting a mental process." (citing *Polaris Innovations Ltd. v. Kingston Tech. Co.*, 223 F. Supp. 3d 1026, 1034 (C.D. Cal. 2016)).

And two, courts are not free to "to read out or ignore limitations . . . merely because they can be found in the prior art." *PowerBlock*, 146 F.4th 1366, 1373 & n.3 (Fed. Cir. 2025) ("We caution parties and tribunals not to conflate the separate novelty and obviousness inquiries under 35 U.S.C. §§ 102 and 103, respectively, with the step one inquiry under § 101."); *see Diamond v. Diehr*, 450 U.S. 175, 188

11

(1981) ("[I]t [is] inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the [§ 101] analysis."). Thus, it does not matter whether Defendants are correct that the "allegedly distinguishing feature" is "different display representations of monophonic and polyphonic mode." (ECF No. 22 at 2:22-3:1.) That contention is irrelevant to a proper, legally-supported Section 101 analysis. Defendants' Section 101 argument is a Section 102 or 103 argument in disguise, which again cannot be decided at this stage of the litigation.

The defendant in *PowerBlock* likewise tried and failed to succeed with just this argument. *See PowerBlock*, 146 F.4th at 1373 ("[Defendant] urges us to ignore the claim limitations involving conventional selectorized dumbbell components … But the *Alice* step one inquiry involves consideration of the claims "*in their entirety to ascertain whether their character as a whole* is directed to excluded subject matter." (quoting *CardioNet*, 955 F.3d at 1367) (emphasis in *PowerBlock*); *accord Baxter Int'l, Inc. v. Carefusion Corp.*, No. 15-cv-09986-AJSE, 2016 WL 2770787, at *12 (N.D. Ill. May 13, 2016) (declining to ignore physical components that were known in the prior art, considering the patent as a whole, and finding that a "concrete, tangible instrument that utilizes a sampling detection technique, measuring battery voltage and current drain, to determine the time of remaining battery life and to issue applicable alert messages" was not directed to an abstract idea). In sum, in conducting the *Alice* step 1 analysis, courts consider ***all*** components and limitations, not only those that (Defendants allege) are novel.

***Third***, Defendants' case law is inapposite. *Electric Power Group* was a method claim untethered to any specific machine or device that broadly claimed (among other things) "receiving a plurality of data streams," "receiving data from other power system data sources," "receiving data from a plurality of non-grid data sources," "detecting and analyzing events in real-time," "displaying the event

63656551

analysis results," "displaying concurrent visualization of measurements,"

"accumulating and updating the measurements," and "deriving a composite

indicator of reliability." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350,

1351-52 (Fed. Cir. 2016).

In contrast, the '683 Patent claims (and describes, in its specification) a

***tangible device*** having a specific combination of elements that constitutes an

improved musical instrument tuner, not merely a "result or effect that itself is the

abstract idea" of having a musical instrument in tune. More specifically, the claims

***are not*** (as Defendants incorrectly argue) directed to the abstract concept of tuning

an instrument or displaying information. Rather, they are directed to an entire

device that, among other things, (1) permits a user to select between monophonic

and polyphonic modes (the "mode selector"), (2) analyzes the incoming frequencies

according to that selection ("wherein the signal analyzer is arranged to establish one

or more characteristics of said input signal in accordance with a selected user

session mode"), (3) determines whether strings are in tune, and then, on that basis,

(4) provides a differentiated display that takes full advantage of the limited display

area on the "housing" ("wherein the representation of a pitch frequency is different

in the monophonic display mode than in the polyphonic display mode").

Courts have repeatedly found that such claims are ***not*** patent ineligible. In

*CardioNet*, the Federal Circuit found the claims were "directed to an improved

cardiac monitoring device and not [directed] to an abstract idea," where the claims

recited a configuration of hardware and software, including multiple "beat

detector[s]," different "determination logic[s]," and an "event generator." 955 F.3d

at 1364, 1368; *see also, e.g.*, *Cardiacsense Ltd. v. Coros Wearables, Inc. See* No.

2:24-CV-11011-MCS-AS, 2025 WL 2630224, at *3 (C.D. Cal. Apr. 23, 2025)

(denying motion to dismiss on Section 101 grounds at *Alice* step one and finding

that a multipart personal device was not merely "directed to the abstract idea of

13

63656551

measuring physical activity" but rather described a "specific means of recording training activity data"); *EcoServices, LLC v. Certified Aviation Serv., LLC*, 830 F. App'x 634, 642 (Fed. Cir. 2020) (holding that a system for automatically controlling a washing procedure [for a turbine engine] that included three structures—(a) "a washing unit," (b) "an information detector," and (c) "a control unit"—was "directed to an improved system for washing jet engines and not to an abstract idea"); *Carbon Autonomous*, 2025 WL 1678438, *9-10 (E.D. Cal. June 12, 2025) (laser weeder was not patent ineligible).

Defendants' reliance on *Riggs*, *Dropbox*, and *Intellectual Ventures*[2] is similarly unavailing. (*See* ECF No. 22 at 10:4-21.) As an initial matter, *Riggs* does not work for Defendants because the display was nothing more than a conduit for an abstract idea. As explained, that is not remotely the case here. The '683 Patent's invention of a musical instrument tuner that can analyze and display the results of both monophonic plucking of a single string and polyphonic strumming of multiple strings, in a manner more helpful and valuable to a user than any prior art device, is a technological improvement. (*See, e.g.*, '683 Patent, 2:10-12, 2:41-44, 2:46-49, 3:42-38.) So too are the differentiated displays that make the best possible use of limited surface area. (*Id.*, 2:51-53, 19:1-4 ("If a polyphonic signal is input to the tuning device also the simpler display changes appearance in order to be better suited for indicating the result of the polyphonic pitch measurement"); *compare supra* FIGs. 4 (tuner in monophonic mode) and 10 (alternate embodiment in monophonic mode), *with* FIGs. 6 (tuner in polyphonic mode) and 12 (alternate embodiment in polyphonic mode). The claimed invention is not merely a "conduit" without a technological improvement. The exact opposite is true. The claims provide a specific solution in their combination of both tangible and functional

---

[2] *Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, No. 2022-1468, 2023 WL 193162, at *2 (Fed. Cir. Jan. 17, 2023); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016).

14

limitations as described above. And the specification is replete with technical

details regarding the invention, discussing, for example, separating partials from the

six strings by using a set of bandpass filters tuned to desired pitch frequencies, and

using a Fourier transform on the input signal. (*See, e.g.*, '683 Patent at 25:59-26:3.)

Attempting to rely on *Dropbox* and *Intellectual Ventures*, Defendants argue

that the limitation of "the representation of a pitch frequency is different [between

modes]" is a solution, not a specific method of achieving a solution (ECF No. 22 at

10:22-23 (quoting 838 F.3d at 1316).) Defendants are wrong. They again confuse

the Section 101 inquiry with the Section 102 and 103 inquiries, as the Federal

Circuit forbids. Here, the applicants did not claim to have improved "the

functioning of a computer" (ECF No. 22 at 10:24-27); they improved a single

tangible device—a physical musical instrument tuner—by conceiving of and

reducing to practice a specific solution: having two different user-selectable modes

and two differentiated display modes corresponding to each, in conjunction with

multiple additional physical and functional limitations. If in their answer

Defendants want to contend that the invention is not novel or not obvious, they may

do so. But such a contention is inappropriate when analyzing patent eligibility on a

motion to dismiss.

In sum, considering claim 1 and claim 30 in their entirety, as required, the

musical instrument tuner is a specific electromechanical invention that, as a whole,

provides users with an improved tuning experience. Because the tuner is not an

abstract idea, the Court need not continue to step 2.

## 2. *Alice* Step 2: The claims recite an inventive concept in the limitations, both individually and as a combination.

Even if the claims were construed as reciting abstract ideas, they still would

be patent eligible under *Alice* step 2 because they contain an inventive concept.

As a threshold matter, because Defendants' arguments at step 1 relied on

15

(improperly) characterizing the structural elements as simultaneously conventional and themselves abstract, Empower's arguments at step 1 have already shown why the claims are "significantly more" than the supposedly abstract idea of "collecting, analyzing, and displaying data." (ECF No. 22 at 8:8.) Thus, as already described above (*see* Section IV.A.1), the asserted claims find "an inventive concept" . . . in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). To restate, the claims include, among other things, (1) a mode selector, (2) the mode-dependent ability to analyze both monophonic and polyphonic signals, and (3) differentiated displays based on that mode selection.

Defendants proclaim, without support, that all of the structural and functional limitations are merely "generic hardware and software." (ECF No. 22 at 11:21.) This argument, like Defendants' others, fails.

***First***, this is inconsistent with the patent's specification. For example, the patent's specification describes how an object of the present invention is to provide a musical instrument tuner that works both with simultaneous strumming and with precision tuning of individual strings. ('683 Patent, 2:41-44.) And it further describes how the device can perform polyphonic tuning using a single audio channel. (*Id.*, 2:47-49.) The patent specification further explains the arrangement of the claimed components with respect to various embodiments. It describes various implementations of the "mode selector" (*id.*, 5:13-51); methods of implementing the algorithms to establish monophonic or polyphonic characteristics (*id.*, 5:55-6:29); and different classification schemes for differentiating between monophonic and polyphonic signals (*id.*, 8:17-10:30). These detailed technological improvements are hardly "generic."

***Second***, in arguing that the invention relies on pre-existing hardware and software (ECF No. 22 at 11:21-13:27), Defendants devote three pages discussing

16

63656551

what the applicants *did not* (and have never claimed to) invent. What the applicants *did* invent, as Defendants fail to acknowledge, is the "non-conventional and non-generic arrangement" of these elements to form what had not previously existed. The combination of a (1) user-operated mode selector, (2) mode-dependent signal analysis, and (3) differentiated mode-dependent displays results in a selectable polyphonic and monophonic tuner that, for example, "provides a tuner with an improved visual output because it always can utilize the available display means to show as much usable information as possible about the input signal, because it actually knows, due to the classifier, how much information is usable." ('683 Patent, 8:43-47.)

Defendants' case law is inapposite. In *Two-Way Media Ltd. V. Comcast Cable COMM's, LLC*, the Federal Circuit considered a method claim with no structural limitations. (ECF No. 22 at 14:8-27 (quoting 874 F.3d 1329, 1334-35).) As explained above, that is simply not the case here. Defendants attempt to render *Two-Way Media* analogous by mischaracterizing the asserted claims as involving only (1) initiating a user session, either monophonic or polyphonic, (2) receiving an input signal, (3) analyzing the input signal consistent with the selected mode, and (4) displaying the results. (ECF No. 22 at 15:1-7.) But again, Defendants wholly ignore the structural claim limitations. They cannot build a Section 101 invalidity argument by picking and choosing a few claim elements and ignoring all the others.

To the contrary, though decided at step 1, *PowerBlock* is still instructive. As there, the '683 Patent is grounded in multiple structural limitations, which are further limited by functional requirements. *Compare, e.g.*, *PowerBlock*, 146 F.4th at 1369 ("(a) a selectorized dumbbell, which comprises: (i) a movable selector having a plurality of different adjustment positions in which the selector may be disposed, wherein the selector is configured . . . thereby allowing a user to select for use a desired exercise weight to be provided by the selectorized dumbbell"), *with*

17

63656551

'683 Patent (*e.g.*, "a user interface comprising a mode selector . . . wherein said mode selector is arranged to allow selection of a user session mode of said musical instrument tuner among a set of user session modes, the user session modes comprising a polyphonic mode and a monophonic mode").

*Scientific Applications & Research Associates (SARA), Inc. v. Zipline International, Inc.* provides an analogous situation at *Alice* step two. No. 22-CV-04480-JSC, 2024 WL 2852139, at *6 (N.D. Cal. June 4, 2024). There, the court denied a motion for judgment on the pleading, which has the same standard as a motion to dismiss, because it found an inventive concept in the "specific implementation of acoustic collision detection in airspace." *Id.* As Defendants do here, Zipline argued that the recited steps merely invoked convention components to achieve an intended result by conventional means. *Id.* But the court held that defendant to its burden, explaining that "[defendant] fails to identify any support within the [asserted patent] or the pleadings to establish, as a matter of law, the ordered steps are not inventive in combination." *Id.* at 7. Here, the '683 patent claims and specification likewise do not establish that the combination of elements is not inventive.

And when ***all of*** the '683 Patent's limitations are considered together, as they must be, then, at a minimum, whether this combination was "well-understood, routine, or conventional is a question of fact" that makes disposition at the motion to dismiss stage inappropriate. *Aatrix*, 882 F.3d at 1128. This "question cannot be answered adversely to [Empower] based on the sources properly considered on a motion to dismiss, such as the Complaint, the patent, and materials subject to judicial notice." *Id.* The Court may not just take Defendants' word for it that the claim limitations supposedly were "well-understood, routine, or conventional." That requires an intensely factual inquiry that simply cannot be performed in the context of a motion to dismiss. Defendants' reliance on this argument is a tacit

18

admission that its motion should be denied.

At the very least, even if the Court determines that Defendants have shown, by clear and convincing evidence, that the patent does not have an inventive concept based on the Complaint as currently pled currently before it, the Court should permit Empower to amend. Neither of the cases Defendants cite in arguing that amendment should not be permitted is on point. Unlike the patents in *Sanderling* or *Lavoult.com* (ECF No. 22 at 15:22-16-2), the '683 Patent claims a physical device, with structural components, whose joint effect in creating the claimed invention presents a factual question amenable to more detailed pleading. Amending the Complaint to add facts supporting the validity that already is presumed would not be futile. Given the Ninth Circuit's liberal policy favoring amendments, leave should be granted even if the Court were to accept Defendants' arguments. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

In sum, Defendants either have failed to show invalidity under *Alice* step 2 or have raised factual questions that mean there is no basis for dismissal at this stage. In either event, their motion should be denied.

## B. Plaintiffs Have Adequately Pled Indirect Infringement.

Defendants' motion to dismiss the indirect infringement allegations is equally unavailing.

### 1. Plaintiffs have adequately pled induced infringement.

"For an allegation of induced infringement to survive a motion to dismiss, a Complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (cleaned up by adopting alterations in *AlexSam*).

19

"Circumstantial evidence may suffice to prove specific intent." *Id.*

Here, the Complaint alleges direct infringement against Defendants with respect to Claim 30, which is an apparatus claim. Defendants do not challenge the adequacy of that allegation. Claim 1 is a method claim that Defendants concede is analogous to Claim 30. (*See* ECF No. 22 at 3:12-5:26.) The Complaint makes clear that under any theory, Defendants' infringement was and is willful—*i.e.*, that Defendants knew that making, using and selling the claimed apparatus, and practicing the claimed method, constituted infringement. (ECF No. 1 ¶¶ 15, 18, 20-22, 26.) The Complaint makes equally clear that Defendants specifically intended to induce infringement, citing in the Exhibit B claim chart numerous instructions from the product manuals on how to practice the claimed methods. (*Id.* ¶¶ 16, 22-23; *id.*, ECF No. 1-2, Ex. B.)

For example, the manual for the infringing GX-100 specifically tells users about their ability to practice the methods of Claim 1, stating: "The GX-100 is equipped with a conventional monophonic tuner which lets you tune your instrument one string at a time, and a polyphonic tuner which lets you play and tune all of your open strings simultaneously." ECF No. 1-2, Ex. B at Page ID #:39; *see also id.* at Page ID #:41 (instructing users to turn the select knob to switch between monophonic and polyphonic display modes). And Defendants' argument that there is no allegation that they knew their acts constituted infringement is belied by numerous such allegations, including ones that they knocked off Empower's product and that Empower put them on notice of their infringement before the Complaint was filed. (*See* ECF No. 1 ¶¶ 15, 18.) Again, on a motion to dismiss, the Court is required to accept all material allegations of the Complaint as true, and to construe them in the light most favorable to Empower. *See Chubb* at 710 F.3d at 956. The allegations of induced infringement, including those set forth in Exhibit B to the Complaint, are more than sufficient to state a claim.

63656551

### 2. Plaintiffs have adequately pled contributory infringement.

"To state a claim for contributory infringement, a Complaint must adequately allege: '(1) the defendant had knowledge of the patent in suit, (2) the defendant had knowledge of patent infringement, and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial non-infringing use,'" *AlexSam*, 119 F.4th at 47 (quoting *Bio-Rad Lab'ys., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (internal quotation marks omitted), and (4) the component must constitute "'a material part of the invention,'" *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015)) (quoting 35 U.S.C. § 271(c)).

As noted above, the Complaint contains plausible allegations that Defendants had knowledge of the patent (uncontested) and knowledge of infringement. (*See* ECF No. 1 ¶¶ 15, 18.) Moreover, the Complaint alleges the sale of specific consumer products to end-users—the BossGX-100, the Boss GX-10, the Boss GT-1000, the Boss GT-1000CORE, the Boss GT- 100 Version 2, the Boss SY-1000, and the Roland GR-55. (*Id.* ¶ 16.) The Complaint clearly alleges, among other things, that the commercial embodiment of the '683 Patent is innovative, and that it is widely recognized by, and has a strong reputation among, consumers. (*Id.* ¶ 14.) The Complaint alleges further that Defendants' devices are knockoffs of Empower's patented product. (*Id.* ¶ 15.) And its inclusion of language from Defendants' own product manuals establishes that are no substantial non-infringing uses. (*Id.* ¶¶ 16, 22-23; *id.*, ECF No. 1-2, Ex. B.) To the contrary, Defendants specifically tout the infringing uses—not non-infringing ones—when instructing users how to operate the accused devices. (*See, e.g.*, ECF No. 1-2, Ex. B at Page ID #39, 41.)

Construing the allegations in the light most favorable to Empower, these allegations unequivocally demonstrate that the accused products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

21

63656551

And again, the products are not just material parts of the invention, but, as the Complaint alleges (ECF No. 1 ¶¶ 14-15), are wholesale copies of the novel, not "staple," invention.

Again, just because Defendants would prefer Empower to have used different nomenclature does not mean that the substance of the Complaint does not sufficiently set forth allegations of induced and contributory infringement. If the Court were to disagree, it should allow Empower the opportunity to amend, which it could easily do and may even have considered doing had Defendants raised this issue at the parties' purported Rule 7-3 conference. *See DeSoto*, 957 F.2d at 658.

## V.    DEFENDANTS' MOTION MAY BE DENIED, IN WHOLE OR IN PART, FOR THEIR VIOLATIONS OF LOCAL RULE 7-3 AND OF THIS COURT'S STANDING ORDER

Empower does not wish to elevate form over substance (as Defendants seek to do in their motion). However, it feels compelled to address Defendants' failures to comply with Local Rule 7-3 and with this Court's own standing order.

Local Rule 7-3 requires that at least seven days before a party files a motion (other than certain excluded ones not relevant here), its counsel must conduct a conference with opposing counsel to "discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." L.R. 7-3. This Court's standing order states the Court "strictly enforces" Local Rule 7-3, and that if the conference is not in person, it must be conducted by videoconference. (ECF No. 15, ¶ G.1(a)(b), at 10:10-23.) Here, Defendants failed to comply in two respects. First, the purported conference was conducted telephonically, not by videoconference. (Declaration of Brian K. Brookey ¶¶ 4-5 (filed concurrently).) Second, and more important, during the telephone call Defendants' counsel did not mention, much less "discuss thoroughly," any alleged pleading defects with respect to induced or contributory infringement. The conversation was limited to the

22

purported invalidity issue. (*Id.* ¶¶ 2-5.)

Defendants also failed to comply with the following provision of the Local Rules: "counsel for the moving party must include a declaration, under penalty of perjury, that sets forth at a minimum the date(s) the conference took place and the position of each party with respect to each disputed issue that will be the subject of the motion." L.R. 7-3. Defendants did not even attempt to comply with this requirement (nor could they have with respect to the pleading issue).[3]

As explained above, there are more than enough substantive reasons to deny Defendants' motion. Defendants' failures to comply with the Local Rules and the Court's standing order provide an independent, discretionary basis for denial, either as to the attack on the adequacy of the pleadings, or as to the entire motion. *See, e.g.*, L.R. 7-4.

## VI.   CONCLUSION

Defendants are willfully infringing a valid patent. It has been more than six months since Empower put Defendants on notice of their infringement. It is time for them to answer the Complaint and for this litigation to proceed. Because the motion to dismiss fails both substantively and procedurally, the Court should deny it in its entirety.

*L.R. 11-6.2 Certificate of Compliance: The undersigned, counsel of record for Plaintiffs, hereby certifies that this brief contains 6,884 words, which complies with the word limit of 7,000 words provided for by L.R. 11-6.1.*

---

[3] Defendants did include in the notice section of the motion the language required by a former version of Local Rule 7-3, which is mirrored in the Court's standing order (ECF No. 22 at ii:18-19). They also provided a "Certificate of Conference" which likewise lacks a declaration under the penalty of perjury, as required under a June 2025 amendment to Local Rule 7-3.

23

1

Dated: February 4, 2026                                    HONIGMAN LLP

2

3

4                                                           By: /s/ Brian K. Brookey
                                                            Brian K. Brookey
5                                                           1440 New York Ave NW
                                                            Suite 200
6                                                           Washington, DC 20005-2111
7                                                           Telephone: 202-844-3390

8
                                                            Aaron D. Bray
9                                                           321 N. Clark St.
                                                            Suite 500
10                                                          Chicago, IL 60654-4769
11                                                          Telephone: 312-701-9300

12
                                                            *Attorneys for Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

63656551