1  MICHAEL SOLOMITA (*Pro Hac Vice*)
2  ALEX SCANDROLI (SBN 345278)
   **NORTON ROSE FULBRIGHT US LLP**
3  555 South Flower Street
4  Forty-First Floor
   Los Angeles, California  90071
5  Telephone:  (213) 892-9200
6  Facsimile:   (213) 892-9494
   michael.solomita@nortonrosefulbright.com
7  alex.scandroli@nortonrosefulbright.com
8
   Attorneys for Defendants
9  ROLAND CORPORATION, ROLAND
10 CORPORATION U.S.
11
12
13
14                **UNITED STATES DISTRICT COURT**
15        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                       **WESTERN DIVISION**
16

17  EMPOWER TRIBE COMMERCIAL          Case No. 2:25-cv-09658
18  FZE, a Dubai company, and
    EMPOWER TRIBE IP HOLDINGS         [*Assigned to the Hon. Sherilyn Peace*
19  LTD., an Abu Dhabi company,       *Garnett*]

20                Plaintiffs,         **DEFENDANTS ROLAND**
          v.                          **CORPORATION'S AND ROLAND**
21                                    **CORPORATION U.S.'S REPLY IN**
    ROLAND CORPORATION, a             **SUPPORT OF MOTION TO**
22  Japanese corporation, and ROLAND  **DISMISS PURSUANT TO FED. R.**
    CORPORATION U.S., a Delaware      **CIV. PROC. 12(b)(6)**
23  corporation,
                                      Hearing Date: February 25, 2026
24                Defendants.         Time: 1:30 p.m.

25                                    Complaint Filed: Oct. 9, 2025
26
27
28

DOCUMENT PREPARED
ON RECYCLED PAPER

1
2

**Table of Contents**

Page

I.      INTRODUCTION ...................................................................................... 1

II.     ARGUMENT ............................................................................................. 1

   A.   The '683 Patent is Invalid Under Section 101 ................................... 1

       1.   The Claims of the '683 Patent are Abstract Under *Alice* Step
            One .......................................................................................... 3

           a.   *The claims are directed to the abstract idea of collecting,
                analyzing, and displaying data* ................................................ 3

           b.   *The Hardware in the Claims Has No Bearing on the
                focus of the Claims* ................................................................... 7

           c.   *Plaintiffs' Assertions Would Preempt the Field of
                Polyphonic Tuners* .................................................................. 11

       2.   The '683 Patent Claims Lack an Inventive Concept ................. 12

           a.   *The Individual Components of the Claims are Well-
                Understood, Routine, and Conventional* .............................. 12

           b.   *The Alleged Inventive Concept is not in the Claims* ............. 14

   B.   Plaintiffs Failed to Adequately Plead Indirect Infringement ........... 16

       1.   Induced Infringement ............................................................... 16

       2.   Contributory Infringement ....................................................... 18

   C.   Defendants Satisfied the Confer Requirement ................................. 19

   D.   The Court Should Deny Leave to Amend ......................................... 21

III.    CONCLUSION ....................................................................................... 22

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
5
    2012 WL 3764695 (Fed. Cir. Aug. 31, 2012) ...................................................... 16

6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ...................................................................................... *passim*

7

*Am. Axle & Mfg. v. Neapco Holdings LLC*,
8
    967 F.3d 1285 (Fed. Cir. 2017) ...................................................................... 3, 10

9

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) .......................................................................... 11

10

*Association for Molecular Pathology v. Myriad Genetics, Inc.*,
11
    569 U.S. 576 (2013) ............................................................................................. 3

12

*Aviation Cap. Partners, LLC v. SH Advisors, LLC*,
    2025 U.S. App. LEXIS 10828 (Fed. Cir. May 6, 2025) ................................. 1, 14

13

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
14
    827 F.3d 1341 (Fed. Cir. 2016) .......................................................................... 12

15

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018) .......................................................................... 14

16

*Berry v. Baca*,
17
    2002 WL 1777412 (C.D. Cal. July 29, 2002) .................................................... 20

18

*Bozeman Fin. LLC v. FRB of Atlanta*,
    955 F.3d 971 (Fed. Cir. 2020) ....................................................................... 2, 12

19

*CarMax Auto Superstores California LLC v. Hernandez*,
20
    94 F. Supp. 3d 1078 (C.D. Cal. 2015) ............................................................... 19

21

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ............................................................................ 21

22

*ChargePoint, Inc. v. SemaConnect, Inc.*,
23
    920 F.3d 759 (Fed. Cir. 2019) ............................................................................ 15

24

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ....................................................................... 2, 12

25

*EcoServices, LLC v. Certified Aviation Serv., LLC*,
26
    830 F. App'x 634 (Fed. Cir. 2020) ................................................................... 9, 10

27

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................................................ 7

28

DOCUMENT PREPARED
ON RECYCLED PAPER

*Gaelco S.A. v. Arachnid 360,*
    LLC, 293 F. Supp. 3d 783 (N.D. Ill. 2017)........................................................ 4

*Halo Electronics, Inc. v. Pulse Electronic, Inc.,*
    136 S. Ct. 1923 (2016) ................................................................................ 16

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015).................................................................... 2

*Martin v. Container Store, Inc.,*
    601 F. Supp. 3d 614 (C.D. Cal. 2022).......................................................... 19

*Planet Bingo v. VKGS LLC,*
    576 F. App'x (Fed. Cir. 2014) ...................................................................... 4

*Powerblock Holdings, Inc. v. IFit, Inc.,*
    146 F.4th 1366 (Fed. Cir. 2025)................................................................. 8, 9

*RecogniCorp, LLC v. Nintendo Co.,*
    855 F.3d 1322 (Fed. Cir. 2017) ................................................................... 14

*Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.,*
    2024 U.S. Dist. LEXIS 99283 (N.D. Cal. June 4, 2024) ........................... 14

*TLI Commc'ns LLC v. AV Auto., L.L.C.,*
    823 F.3d 607 (Fed. Cir. 2016)...................................................................... 4

*Trading Techs Int'l, Inc. v. IBG LLC,*
    921 F.3d 1084 (Fed. Cir. 2019).................................................................... 15

*Trading Techs Int'l, Inc. v. IBG LLC,*
    921 F.3d 1378 (Fed. Cir. 2019).................................................................... 15

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.,*
    No. 6:12-cv-366-MHS-JDL, 2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) .......... 17

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC,*
    635 F. App'x 914 (Fed. Cir. 2015) .............................................................. 4

*W. View Research, LLC v. Audi AG,*
    685 F. App'x 923 (Fed. Cir. 2017) .............................................................. 4

*Yanbin Yu v. Apple Inc.,*
    1 F.4th 1040 (Fed. Cir. 2021)................................................................... 3, 4

**Rules and Statutes**

35 U.S.C. ¶ 112 ................................................................................................ 10

35 U.S.C. § 101 ........................................................................................ *passim*

FRCP Rule 12(b)(6) .................................................................................. *passim*

L.R. 7-3 ..................................................................................................... 19, 20

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

DOCUMENT PREPARED ON RECYCLED PAPER

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' opposition confirms that the claims of United States Patent No. 8,338,683 ("'683 Patent") are invalid under 35 U.S.C. § 101. Regarding *Alice* Step One, Plaintiffs admit that the focus of the claims are directed to collecting, analyzing, and displaying data, *i.e.*, analyzing and displaying the results of monophonic and polyphonic tuning. The case law dictates that such claims are directed to an abstract idea. Regarding *Alice* Step Two, Plaintiffs do not and cannot properly rebut the reality that the claims describe generic, conventional hardware such that the claims fail to recite an inventive concept.

Similarly, Plaintiffs concede that indirect infringement allegations require that specific elements must be pled in the Complaint. Plaintiffs' opposition, however, confirms that the Complaint fails to plead specific facts that plausibly show these elements. Rather, Plaintiffs engage in handwaving trying to connect dots in the Complaint that fall far short of the pleading requirements, and ask the Court to do the work for them. Plaintiffs' procedural arguments are an attempt to place form over substance to mask their deficient pleadings. As such, Plaintiffs' indirect infringement allegations should also be dismissed.

### II.    ARGUMENT

#### A. The '683 Patent is Invalid Under Section 101

The Court should find that claims 1 and 30 of the '683 Patent ("Asserted Claims"), and their dependent claims, are invalid because they are directed to ineligible subject-matter: under *Alice* Step One, the claims are directed to the abstract concept of collecting, analyzing, and displaying data, and under *Alice* Step Two, the claims do not include a transformative "inventive concept."

The Court may properly perform a § 101 analysis at the Rule 12 stage of proceedings. *Aviation Cap. Partners, LLC v. SH Advisors, LLC*, 2025 U.S. App.

DOCUMENT PREPARED
ON RECYCLED PAPER

LEXIS 10828, at *1 (Fed. Cir. May 6, 2025). "Eligibility under § 101 is a question of law, based on underlying facts." *Bozeman Fin. LLC v. FRB of Atlanta*, 955 F.3d 971, 978 (Fed. Cir. 2020). Like the situation here, many § 101 determinations do not contain genuine disputes over the material underlying facts. *See, e.g.*, *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (patent owner conceded the argued inventive concept "was a routine function of scanning technology at the time the claims were filed"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (patent owner argued an "interactive interface" is "a specific application of the abstract idea that provides an inventive concept" and did not dispute that the computer interface was generic).

Plaintiffs take a kitchen sink approach to rebutting Defendants' § 101 arguments, inundating the Court with a torrent of text that is either irrelevant or incorrect. But Plaintiffs neither provide meaningful differentiation between method claim 1 and system claim 30 nor contest that the focus of the claims is independent of any physical hardware, all of which they concede is generic. Instead, Plaintiffs admit that the Asserted Claims are directed to collecting, analyzing, and displaying data, acts long held patent-ineligible. (ECF No. 25 at 14:12-15 (asserting that the claims are directed to "analyz[ing] and display[ing] the results of both monophonic plucking . . . and polyphonic strumming")).

Plaintiffs also admit that each individual element of the Asserted Claims was well-known and conventional, arguing that the "inventive concept" is found only "in the non-conventional and non-generic arrangement of known, conventional pieces." (ECF No. 25 at 16:4-6). Plaintiffs fail, however, to describe *how* the combination of claim elements is "non-conventional and non-generic" such that an inventive concept may be found. And Plaintiffs provide no arguments with respect to the dependent claims of the '683 Patent.

DOCUMENT PREPARED ON RECYCLED PAPER

Accordingly, the Court should find the claims of the '683 Patent are directed to ineligible subject matter under *Alice* Step One and do not contain an inventive concept under *Alice* Step Two.

### 1. The Claims of the '683 Patent are Abstract Under *Alice* Step One

#### a. The claims are directed to the abstract idea of collecting, analyzing, and displaying data

Plaintiffs' first argue that under *Alice* Step One the inquiry starts and ends with the assertion that a "musical instrument tuner is a machine." (ECF No. 25 at 8:13-11:2). While "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title," 35 U.S.C. § 101, the Supreme Court has long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (noting that the Federal Circuit has applied "this exception for more than 150 years"). The Federal Circuit has "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask 'what else is there in the claims before us?'" *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).

To determine what a claim is "directed to," the Court looks to the "focus of the claimed advance." *Trading Techs Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019). In other words, the Court starts by "asking what the patent asserts to be the focus of the claimed advance over the prior art." *Yanbin Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021). The Court must "focus on the claims, not the specification, to determine section 101 eligibility." *Am. Axle & Mfg. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2017) (further stating that "features

DOCUMENT PREPARED ON RECYCLED PAPER

that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis"). "[W]hether a device is 'a tangible system (in § 101 terms, a 'machine')' is not dispositive." *Yanbin Yu*, 1 F.4th at 1044 n.2 (holding that claims to "an improved digital camera" were ultimately directed to the abstract idea of "taking two pictures . . . and using one picture to enhance the other in some way").

The Federal Circuit has repeatedly held that drafting physical components into claims does not affect the § 101 analysis. *Alice*, 134 S. Ct. at 2360 ("[T]his Court has long warned against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art," meaning that reciting "a handful of generic computer components" does not make an abstract idea patent eligible); *Planet Bingo v. VKGS LLC,* 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (claims required computer with a central processing unit, a memory, an input and output terminal, a printer, video screen, and a program enabling management of bingo game); *Electric Power Group, LLC v. Alstom, S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016) (claims required an interconnected electric power grid); *TLI Commc'ns LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (claim required telephone unit and server); *W. View Research, LLC v. Audi AG*, 685 F. App'x 923, 925-27 (Fed. Cir. 2017) (claim recited "computerized apparatus capable of interactive information exchange with a human user via a microphone, one or more processors, a touch-screen input and display device, a speech synthesis apparatus with at least one speaker, an input apparatus, and a computer program") (internal quotation marks omitted); *Gaelco S.A. v. Arachnid 360*, LLC, 293 F. Supp. 3d 783, 793 (N.D. Ill. 2017) (holding that "[b]ecause the hardware components in these cases were generic in nature, they did not make the abstract ideas at issue any less abstract," and that to hold otherwise would improperly permit "an author of claims [to] manipulate patent eligibility simply by drafting generic physical components into the claims"). Further, assertions that an invention passes muster at § 102 are insufficient to confer eligibility at *Alice*

Step One. *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 918-19 (Fed. Cir. 2015) ("If we adopt [Plaintiffs'] argument, all a patentee would need do to insulate itself from a § 101 challenge would be to identify a single prior art reference in the specification and state that its invention improves upon that reference.").

Plaintiffs, in no fewer than nine instances in the opposition, concede that the '683 Patent and its claims focus on collecting, analyzing, and displaying monophonic and polyphonic mode data. For example, Plaintiffs argue that:

> The '683 Patent claims a solution that permits a "guitar to be tuned easily by strumming/playing the strings simultaneously, and also facilitates precision tuning of individual strings." (*Id.*, 2:41-44.) It does so by claiming a new and improved tuner that is physically capable of "simultaneous pitch frequency determination of several strings" via "a single audio channel." (*Id.*, 2:46-49.) And it does so while providing "sensible/usable information" for both "monophonic and polyphonic signals." (*Id.*, 2:51-53.)

(ECF No. 25 at 4:25-5:4; *see also id.* at 9:21-23; 10:25-27 ("[t]he specification identifies a specific problem—tuning guitar strings simultaneously and displaying the results accurately in different modes—and recites specific physical architecture for achieving this result"); 12:2-4; 13:10-18; 14:12-15 (describing the "'683 Patent's invention [as] a musical instrument tuner that can analyze and display the results of both monophonic plucking . . . and polyphonic strumming . . ."); 15:10-15 (stating that the applicants of the '683 Patent improved a musical tuner "by conceiving of and reducing to practice a specific solution: having two different user-selectable modes and two differentiated display modes corresponding to each"); 16:14-25; 17:4-10. The Federal Circuit has clearly stated that collecting, analyzing, and displaying data is an abstract idea under *Alice* Step One. (ECF No. 22 at 8:6-11:4).

Moreover, tuning is the quintessential definition of an abstract concept because musicians have been tuning stringed instruments by ear for as long as there have been stringed instruments. A musician would play a note, compare it in their mind to what the note should sound like, and then adjust their instrument, repeating the process

DOCUMENT PREPARED ON RECYCLED PAPER

until the notes matched. This is the most basic "monophonic tuner." '683 Patent at 20:55-21:6 (describing monophonic tuners as applying well-known stroboscopic measurements). Likewise, a musician has been tuning by ear multiple strings played at the same time allowing a person to differentiate "two pitch frequencies simultaneously." '683 Patent at 1:26-29, 2:7-8, 26:31-33. Doing so with a tuner would merely "seek[] to automate 'pen and paper methodologies' to conserve human resources and minimize errors." *Univ. of Florida Research Foundation, Inc. v. General Electric Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ("This is a quintessential 'do it on a computer' patent: it acknowledges that data from bedside machines was previously collected, analyzed, manipulated, and displayed manually, and it simply proposes doing so with a computer. We have held such claims are directed to abstract ideas.").

Plaintiffs' opposition would have the Court believe that the '683 Patent invented polyphonic tuning. Specifically, in the "Factual and Procedural Background," Plaintiffs admit that monophonic tuners were known. (ECF No. 25 at 4:14-5:4). Plaintiffs then claim that monophonic tuners "could only 'measure one pitch frequency at a time'" and that the '683 Patent "solved specific technical problems" when "[s]uch monophonic tuners, if fed 'two pitch frequencies simultaneously,' would fail to detect a 'valid input.'" *Id.* Plaintiffs argue that '[t]he '683 Patent claims a solution that permit a 'guitar to be tuned easily by strumming/playing strings simultaneously, and also facilitates precision tuning of individual strings.'" *Id.* However, Plaintiffs neglect to inform the Court that the '683 Patent admits that polyphonic tuners were known in the prior art. *See, e.g.,* '683 Patent at 2:24-29 ("Another tuning device, in which frequency deviations for more than one string at [a] time can be measured and displayed is disclosed in U.S. Patent No. 6,066,790 by Freeland et al."). These admissions are also supported by other

parts of the '683 Patent as well as the prosecution history of the '683 Patent as set forth in Defendants' opening papers.

Rather, as noted above, Plaintiffs admit that the alleged invention and focus of the claims is a "different way of providing monophonic . . . and polyphonic tuning information." (ECF No. 25 at 5:16-21). Unfortunately for Plaintiffs, this focus is directed to the abstract idea of collecting, analyzing, and displaying information.

b. *The Hardware in the Claims Has No Bearing on the focus of the Claims*

Plaintiffs argue repeatedly that the Asserted Claims recite specific hardware. (*See, e.g.,* ECF No. 25 at 8:25-9:2). *University of Florida* is instructive. There, the Federal Circuit held the claims were ineligible under § 101. First, the Federal Circuit held that method claim 1 was representative of other claims, including system claim 6. 916 F.3d at 1366. Like the Asserted Claims here, those claims start with physical devices – bedside machines. Despite this limitation, however, the claims were found to be directed to "replacing" "'pen and paper methodologies' with 'data synthesis technology' in the form of 'device drivers written for the various bedside machines' that allow the bedside device to present data from the various bedside machines 'in a configurable fashion within a single interface.'" *Id.* at 1367. Such actions rendered the asserted patent "a quintessential 'do it on a computer' patent: it acknowledges that data from bedside machines was previously collected, analyzed, manipulated, and displayed manually, and it simply proposes doing so with a computer." *Id.* The Federal Circuit further found that the patent "nowhere identifie[d] . . . any 'specific improvement to the way computers operate.'" *Id.* at 1368 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)). Finally, the Federal Circuit found:

> [t]he claimed "programmatic action involving said machine-independent data" can be performed using "[a]ny kind of computer system or other apparatus," including a "general-purpose computer system." And while the claims recite "presenting results from said programmatic actions upon a bedside graphical user interface ["GUI"],"

DOCUMENT PREPARED ON RECYCLED PAPER

the '251 patent explains "the invention is not limited by the particular GUI or data entry mechanisms contained within views of the GUI

*Id.* (internal citations omitted).

Like the claims in *Univ. of Fla.*, the Asserted Claims purport to include physical features; such features, however, have no bearing on the focus of the claims and are therefore irrelevant to the *Alice* Step One analysis. The Asserted Claims are directed to "receiving" data – from the bedside monitors in *Univ. of Fla.* and from the input module here. In *Univ. of Fla.*, the claims provided for analysis of the data through "converting" the data into a different format and then performing a "programmatic action" upon it; here, the data is analyzed by the signal analyzer to determine "characteristics" of the signal. And as in *Univ. of Fla.*, the claims end with displaying the information. The Court need not tread new ground; Plaintiffs' arguments have been tested and refuted on numerous occasions, as they should be here.

Plaintiffs attempt to differentiate *Electric Power* by stating that the claim at issue was "untethered to any specific machine or device." (ECF No. 25 at 12:23-25). Not so. There, the analyzed claim was representative of various system claims, including claim 9. 830 F.3d at 1351 n.1. Like the Asserted Claims, system claim 9 required physical "monitor computers . . . for receiving . . . data," no different from the housing, input module, and signal analyzer here. The claims there involved the computer "receiving data," "detecting and analyzing events in real-time," and "displaying the event analysis," as they do here. *Id.* at 1351-52. The Federal Circuit held that the "focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id.* at 1354. The claims here, as Plaintiffs admit, are no different: they do not claim "computer-functionality improvements" and do not recite non-generic computer components. *Id.*; (ECF No. 25 at 15:10-11 "the applicants did not claim to have improved 'the functioning of a computer'").

Instead, Plaintiffs attempt to analogize their tuner-computers to the physical dumbbells and motors in *Powerblock*. As Plaintiffs admit, the patent in *Powerblock* was directed to a technological improvement to a physical dumbbell system that included physical weights on either end and a selector connected to an "electric motor" that "physically moves the selector into different adjustment positions corresponding to the desired weight selected by a user." (ECF No. 25 at 10:4-14); *Powerblock Holdings, Inc. v. IFit, Inc.*, 146 F.4th 1366, 1369, 1372 (Fed. Cir. 2025). The Federal Circuit distinguished *Univ. of Fla.* on the basis that it  involved a claim that merely performed steps using computer hardware. *Id.* at 1372 (internal citation omitted).

The claims here, by contrast, are very different. There is no mechanical manipulation of weights, no physical engine. Instead, the claims are directed to processes performed on computers: picking a mode, *see, e.g.*, '683 Patent at 5:14-16, 29:1, 29:7-31 (claim 1), receiving an input signal by an input module, *id.* at 28:66-67 (claim 1), running the signal through a signal analyzer, which "performs calculations based on the input signal," *id.* at 13:59-60, and displaying the results based on the selected mode, *id.* at 29:2-31—almost identical to the performed actions found ineligible in *Univ. of Fla.*

Nor do *CardioNet* or *EcoServices* help. In *CardioNet*, the Federal Circuit started with the fundamental question: did "the claims focus on a specific means or method that i*mproves the relevant technology*, or are [they] instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery?" 955 F.3d 1358, 1368 (Fed. Cir. 2020). The court reviewed the claims and specification, finding that the focus was on "a specific means or method that improves cardiac monitoring technology" because the claimed invention "achieve[d] multiple technological improvements," including "more accurately detect[ing] the occurrence of atrial fibrillation and atrial flutter, increasing sensitivity, decreasing

DOCUMENT PREPARED ON RECYCLED PAPER

"false positives and false negatives," and "identify[ing] sustained episodes of atrial fibrillation and atrial flutter that have 'increased clinical significance.'" *Id.* at 1368-69. In other words, the claims at issue improved the actual operation of a cardiac monitoring device.

Similarly, in *EcoServices*, the Federal Circuit held that the claimed invention was a specific improvement to the system, claiming advantages over human washing including higher-quality washing, reduced risk of error, higher degree of safety, and improved reliability. *EcoServices, LLC v. Certified Aviation Serv., LLC*, 830 F. App'x 634, 643 (Fed. Cir. 2020) ("These described advantages are important to our determination that the claims provide a technical improvement to jet engine washing."). Here, the '683 Patent does not discuss any improvements to the tuner itself: no improved algorithm; no improved accuracy, and no improved tuning technology. Instead, it merely asserts an alleged improvement by displaying monophonic and polyphonic modes using generic processes and machinery.

While Plaintiffs attempt to tie in "bandpass filters" in order to confer eligibility, such arguments fail on multiple levels. First, bandpass filters are generic engineering components that have been used in circuits for many decades, and that perform limitations easily performed in the mind.[1] Such components may not be used to change the abstract focus of the claims. *Alice*, 134 S. Ct. at 2360 ("[T]his Court has long warned against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art," meaning that reciting "a handful of generic computer components" does not make an abstract idea patent eligible).

Second, the claims are not limited to the use of bandpass filters; the specification provides that they are "one method" of polyphonic pitch detection and the claims make no mention of and are not limited to the use of bandpass filters. '683

---

[1] The '683 Patent does not describe what "bandpass filters" are. If they were not common, well-understood components, the patent would be invalid under 35 U.S.C. ¶ 112 for lack of written description.

DOCUMENT PREPARED ON RECYCLED PAPER

Patent at 25:59-64; *Am. Axle*, 967 F.3d at 1293 ("[F]eatures that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis").

Third, the use of bandpass filters was well-understood in the art. The '683 Patent describes existing tuner systems, including that described by United States Patent No. 4,457,203, which describes the use of "narrow bandpass filters" as part of the claimed invention. '683 Patent at 1:19-25.

       c.    *Plaintiffs' Assertions Would Preempt the Field of Polyphonic Tuners*

Rather than invent a new method of polyphonic tuning, Plaintiffs assert that the '683 Patent invented a tuner "that is physically capable of 'simultaneous pitch frequency determination of several strings' via 'a single audio channel.'" (ECF No. 25 at 5:1-2). In other words, Plaintiffs claim polyphonic tuning writ large. '683 Patent at 2:24-40 (describing a prior art patent as "us[ing] a single channel pick-up, common for all strings, for measurement of all strings simultaneously"). Such assertion triggers *Alice* Step One's "preemption" concerns. *Alice*, 573 U.S. at 216 (noting that the 101 exceptions are grounded in the issues of preemption). The concern with preemption is that "patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* "In other words, patent claims should not prevent the use of the basic building blocks of technology—abstract ideas, naturally occurring phenomena, and natural laws." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). Preemption therefore "signal[s] patent ineligible subject matter." *Id.* (further noting that "the absence of complete preemption does not demonstrate patent eligibility"). By claiming polyphonic tuning, Plaintiffs seek exclusive rights to polyphonic tuners, "exempting [them] from any future use." *Id.* Accordingly, even if Plaintiffs are correct, their claims are *still* ineligible because the use of generic components cannot be used to change the fact that the focus of the claims of the '683 Patent under *Alice* Step One is on the collection, analysis, and display of data.

## 2. The '683 Patent Claims Lack an Inventive Concept

### a. The Individual Components of the Claims are Well-Understood, Routine, and Conventional

As a threshold matter, Plaintiffs admit that all of the individual components are well-understood, routine, and conventional:

> Thus, as already described above (see Section IV.A.1), the asserted claims find "an inventive concept" . . . in the non-conventional and non-generic arrangement of known, conventional pieces."

(ECF No. 25 at 16:4-6 (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)); 17:1-3 ("What the applicants did invent, as Defendants fail to acknowledge, is the "non-conventional and non-generic arrangement" of these elements to form what had not previously existed.")). For an ordered combination to provide an inventive concept, they must do more than what is "already present when the steps are considered separately." *Alice*, 573 U.S. at 225. Where, however, the Plaintiffs "fail[] to identify what about the ordering of the steps in [the asserted claim] provides an inventive concept," the claim fails Step Two. *Bozeman*, 955 F.3d at 981.

Here, Plaintiffs "fail[] to identify" how the ordered combination is a "non-conventional and non-generic arrangement." "For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347-48 (alteration in original) (quoting *Alice*, 134 S. Ct. at 2359). As the court in *Bascom* noted, merely reciting an abstract idea "perform[ed] on a set of generic computer components," as claim 1 does here, "would not contain an inventive concept." 827 F.3d at 1350.

The Federal Circuit has time and again found such claims to fail *Alice* Step Two. In *Electric Power Group*, the Federal Circuit found on similar claims that there was no inventive concept because:

DOCUMENT PREPARED ON RECYCLED PAPER

the claims' invocation of computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications. The claims at issue do not require any nonconventional computer, network, or display components, or even a "non-conventional and non-generic arrangement of known, conventional pieces," but merely call for performance of the claimed information collection, analysis, and display functions "on a set of generic computer components" and display devices.

> ***Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.*** That is so even as to the claim requirement of "displaying concurrent visualization" of two or more types of information, . . . even if understood to require time-synchronized display: nothing in the patent contains any suggestion that the displays needed for that purpose are anything but readily available. We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are "insufficient to pass the test of an inventive concept in the application" of an abstract idea.

830 F.3d at 1355 (emphasis added).

Here, the claims perform a conventional activity in a conventional way, by inputting a signal, analyzing the signal, and outputting the results. These activities are no different from those well-understood, routine, and conventional in the art. For example, the first paragraph of the background section of the '683 Patent discloses several patents that "can measure one pitch frequency at a time and display the [results]." '683 Patent at 1:24-26. The '683 Patent further admits that taking a measurement and analyzing it was well-understood, routine, and conventional, whether on a monophonic or polyphonic basis. *Id.* at 2:8-12 ("An element of such a system is a measurement part, which by using one method or another, measures the tuning of each string. Such systems may work only for a single string at a time, whereas others may work on all strings simultaneously."). The use of a "display" to show the analysis was further well-understood, routine, and conventional. *Id.* at 1:60-67 ("Some musical instrument tuners are generally applicable in that they have display means for indicating all 12 semitone names (from the chromatic scale)."). According to the background of the '683 Patent, the claimed steps are in a conventional, generic order: receive a signal, analyze it, and display it. Neither the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

specification nor the Complaint assert that the order of the steps was unusual and inventive.

Nor is Plaintiffs' proclamation that "whether this combination was 'well-understood, routine, or conventional is a question of fact' that makes disposition at the motion to dismiss stage inappropriate" proper. As noted above, the Federal Circuit has frequently found dismissal under § 101 proper at the Rule 12 stage. *Aviation Cap. Partners*, 2025 U.S. App. LEXIS 10828, at *1. Raising a "genuine question of material fact" requires Plaintiffs do more than provide a "conclusory declaration." *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1372 (Fed. Cir. 2018). Plaintiffs must point to actual evidence "in the record" that supports their claim.

Plaintiffs attempt to bypass this requirement by citing to a case from the Northern District of California where the court found that the claims did not find a lack of inventive concept at *Alice* Step Two because the defendant failed to provide evidence that the claim used "a conventional ordering of steps." *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, 2024 U.S. Dist. LEXIS 99283, at *15, 18 (N.D. Cal. June 4, 2024). In contrast, here, Defendants have cited to the specification, admitted prior art, and existing case law, providing extensive evidence that the claims use the same, conventional ordering as every other tuner and computer. (ECF 22 at 11:21-15:7).[2]

Having failed to identify any material facts, and in light of Defendants' showings, the Court should find that Plaintiffs failed to raise a question of fact with respect to *Alice* Step Two.

### b.    The Alleged Inventive Concept is not in the Claims

To save a patent at *Alice* Step Two, an inventive concept must be evident in

---

[2] Plaintiffs attempt to distinguish *Two-Way Media* by stating it did not involve "structural limitations." (ECF 25 at 17:11-20). Plaintiffs provide no support for their premise that "structural limitations" are transformative at *Alice* Step Two, and Defendants are unaware of any. To the contrary, "performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices" is insufficient at Step Two. *Elec. Power Grp.*, 830 F.3d at 1355.

DOCUMENT PREPARED
ON RECYCLED PAPER

the claims. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). "Ultimately, the §101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed. Even a specification full of technical details about a physical invention may nonetheless conclude with [unpatentable] claims" directed to an abstract idea. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (cleaned up). While Plaintiffs assert that there are "detailed technological improvements" that "are hardly 'generic,'" (ECF No. 25 at 16:14-25), they all fail for multiple reasons.

First, the details argued by Plaintiffs, such as how to perform polyphonic tuning using a single audio channel, the alleged "various implementations of the 'mode selector'", "methods of implementing the algorithms" and "classification schemes for differentiating between monophonic and polyphonic signals" are not present in the claims. Even when taking Plaintiffs' allegations as true, they are still unsupported by the claim language, and thus they cannot help it pass the *Alice* Step Two test.

Second, the technological improvement admitted by the Plaintiffs of "analyz[ing] and display[ing] the results of both monophonic plucking of a single string and polyphonic strumming of multiple strings, in a manner more helpful and valuable to a user," (ECF No. 25 at 14:12-17), is at best an improved user experience rather than a technical solution. As further admitted by the Plaintiffs, the "musical instrument tuner … as a whole, provides users with an improved tuning experience." (ECF No. 25 at 15:19-21). These are non-technical solutions that simply provide user "as much usable information as possible about the input signal" (ECF No. 25 at 17:4-10)—not enhancements to computer functionality. *Trading Techs. Int'l v. IBG LLC*, 921 F.3d 1084, 1090 (Fed. Cir. 2019).

Accordingly, the Court should find that there is no question of fact, and hold

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

that the ordered combination is not a "non-conventional and non-generic arrangement" that confers an inventive concept that is significantly more than the abstract idea itself of collecting, analyzing, and displaying data.

### B. **Plaintiffs Failed to Adequately Plead Indirect Infringement**

Plaintiffs' failure to plausibly allege each and every element of either theory of indirect infringement should lead to dismissal of their induced and contributory infringement claims.

#### 1. **Induced Infringement**

Plaintiffs concede that "[f]or an allegation of induced infringement to survive a motion to dismiss, a Complaint must plead facts plausibly showing that the accused infringer ***specifically intended*** another party to infringe the patent and ***knew that the other party's*** acts constituted infringement." (ECF No. 25 at 19:22-27 (emphasis added)). Plaintiffs attempt to rely on willful infringement to establish Defendants' knowledge on "the other party's acts constituted infringement" because "Defendants do not challenge the adequacy of that [direct infringement] allegation." *Id*. at 19.

First, whether Plaintiffs have properly pleaded direct infringement is irrelevant to Plaintiffs' inducement claim. For Defendants to be liable for inducement, the allegedly induced party or parties must commit at least some acts of direct infringement. *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 2012 WL 3764695, at *14 (Fed. Cir. Aug. 31, 2012). The Complaint fails to *specify* any direct infringer other than Defendants, the allegedly inducing parties. (ECF No. 1 at ¶ 21).

Second, and more importantly, the Complaint fails to allege, as Plaintiffs concede it must, sufficient facts to plausibly support that Defendants (1) engaged in affirmative acts to induce infringement or (2) possessed the requisite specific intent. Plaintiffs' own failure to address each element of willful infringement[3] rather than

---

[3] The legal standard for willful infringement requires the following: (1) a finding of patent infringement; (2) the alleged willful infringer knew of the infringed patent or reckless indifference towards knowing the infringed patent; (3) the alleged willful infringer knew or subjectively should have known (was willfully blind) to a substantial risk that the patent(s) at issue would be infringed;

DOCUMENT PREPARED ON RECYCLED PAPER

relying on a sparse and conclusory allegation—Defendants' infringement was and is willful—is another example that the Complaint is devoid of any specific facts required to state a plausible claim for relief. As noted above, "the intent requirement for inducement requires more than just the intent to cause the acts that produce direct infringement, . . . ***the inducer must have an affirmative intent to cause direct infringement***." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (emphasis added); *see also U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.,* No. 6:12-cv-366-MHS-JDL, 2013 WL 8482270, at *4 (E.D. Tex. Mar. 6, 2013) (finding that bare allegations that a defendant supplied an allegedly infringing system to its customers and provided those customers with "instructions" to utilize the system in an infringing manner are insufficient).

Plaintiffs' further attempt to rely on product manuals in Exhibit B for specific intent to cause direct infringement fares no better. The product manuals were written as standard operating instructions rather than with knowledge of the '683 Patent or specific intent to cause another's infringement. Moreover, Plaintiffs cannot establish the specific intent merely by pointing to standard product manuals that describe non-infringing functionality. In particular, Plaintiffs state that "[t]he GX-100 is equipped with a conventional monophonic tuner which lets you tune your instrument one string at a time, and a polyphonic tuner which lets you play and tune all of your open strings simultaneously" as evidence of specific intent to cause users to infringe the methods of Claim 1. (ECF No. 25 at 20:13-19). However, the alleged instructions here are directed to functionality—tuning all of your open strings simultaneously and displaying in monophonic or polyphonic modes that was well-known, as further acknowledged in the '683 Patent itself. '683 Patent at 1:19-2:40.

Third, simply selling products is not sufficient to incur liability for inducing

and (4) the totality of the circumstances supports that the infringement was deliberate, egregious, or otherwise culpable behavior outside the ordinary patent infringement. *See Halo Electronics, Inc. v. Pulse Electronic, Inc.,* 136 S. Ct. 1923 (2016).

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

infringement because, without more, there is no basis from which to infer that customers are using those products in an infringing manner. Here, there are no facts alleged in the Complaint indicating that the customers to whom Defendants may have sold the products referenced in the Complaint are using those products in the manner claimed in the '683 Patent.

### 2. Contributory Infringement

Plaintiffs likewise fail to adequately plead contributory infringement. Plaintiffs admit that they "must adequately allege: … 'the accused product is not a staple article or commodity of commerce suitable for a substantial non-infringing use.'" (ECF No. 25 at 21:2-9). But such allegations are completely missing from the Complaint.

Plaintiffs attempt to rely on Defendants' product manuals to establish that there are no substantial non-infringing uses, but this argument conflates describing how a product works with proving the product has no substantial non-infringing uses. Product manuals that describe how to use monophonic and polyphonic tuning modes do not establish "no substantial non-infringing use" because these manuals merely explain standard tuner functionality that is well-known as acknowledged by the '683 Patent itself. '683 Patent at 1:19-2:40. Plaintiffs provide no factual allegations explaining why uses consistent with a well-known functionality—using a conventional monophonic tuner of the accused product to tune your instrument one string at a time—are not substantial non-infringing uses.

Instead of setting forth specific facts establishing "a claim to relief that is plausible on its face," Plaintiffs improperly ask the Court to do their homework by connecting the dots and draw speculative inferences unsupported by the allegations.

As a result of the foregoing, the Court should dismiss Plaintiffs' claims for indirect infringement, i.e., induced infringement and contributory infringement.

Document Prepared on Recycled Paper

## C. **Defendants Satisfied the Confer Requirement**

The Court should find that Defendants complied with the Local Rules and the Court's standing orders. This is _not_ an instance where a party has failed to confer prior to resorting to motion practice that precludes reaching the merits. Plaintiffs' counsel concedes that a telephonic conference took place on January 16, 2026, during which Defendants' counsel discussed that a "FRCP Rule 12(b)(6)" motion would be filed on patent ineligibility grounds. (_See_ ECF 22-1 (Brookey Dec.) at ¶¶ 3-4). This conference occurred seven (7) days prior to when Defendants' motion was filed. (ECF No. 22 (Jan. 23, 2026)).

Notwithstanding this, Plaintiffs ask this Court to summarily deny the motion, or deem certain dismissal arguments waived, for not "strictly" complying with certain aspects of L.R. 7-3.[4] First, Plaintiffs argue Defendants' counsel did not identify two of the grounds for dismissal during the telephonic conference; namely, "pleading defects with respect to induced and contributory infringement[.]" (ECF No. 25 at 22:26-27). Second, Plaintiffs air a number of technical grievances with how Defendants certified the confer in their motion, including the placement of the confer certification and that said certification was not made under penalty of perjury. _Id._ at 23:2-7. Neither of these arguments support such severe penalties where, as here, there was a good faith effort to confer and no resulting prejudice is traceable to the non-compliance.

With respect to Defendants' grounds for dismissal, _Furie v. Infowars, LLC_ reached the merits of a motion for summary judgment despite "the parties fail[ing] to meet and confer in strict compliance with [L.R.] 7-3[.]" 401 F. Supp. 3d 952, 970 (C.D. Cal. 2019). _Furie_ found the plaintiff suffered no real prejudice from certain summary judgment issues not being raised during the _telephonic_ conference of

---

[4] Plaintiffs are correct that non-compliance with L.R. 7-3 does not mandate denial of any aspect of Defendants' motion. _CarMax Auto Superstores California LLC v. Hernandez_, 94 F. Supp. 3d 1078, 1087-88 (C.D. Cal. 2015). The penalties are discretionary.

DOCUMENT PREPARED
ON RECYCLED PAPER

counsel. *Id.* (emphasis added); *see also Martin v. Container Store, Inc.*, 601 F. Supp. 3d 614, 616 (C.D. Cal. 2022) (reaching merits of motion, despite confer occurring night of filing, because denying the motion for lack of confer would mean accepting claims not properly before the court).

Here, as in *Furie*, Plaintiffs cannot establish prejudice by virtue of Defendants not specifically raising the pleading sufficiency arguments during the January 16 telephonic conference. By definition, a 12(b)(6) motion predicated on patent ineligibility means that the patent allegations fail to state a claim for which relief can be granted. This extends to Plaintiffs' derivative claims for induced and contributory infringement. Said differently, by conferring on the ineligibility of the '683 Patent, Defendants were on fair notice they would be defending the sufficiency of the allegations for claims that hinge upon the viability of that patent.[5]

With respect to the certification itself, Defendants appreciate the import of, and in no way intended to disregard, local procedures governing conference of counsel. But the absence of an under-oath attestation did not result in prejudice to Plaintiffs when it is uncontested that the January 16 conference took place. And the focus on where the certification was placed in Defendants' motion is, as Plaintiffs acknowledge, "elevat[ing] form over substance." (ECF No. 22 at 25:13).

At bottom, even if the letter of the procedural aspects of L.R. 7-3 were not strictly observed, the spirit and substance of the confer requirement were. Indeed, § G(1)(d) of the Court's Standing Order contemplates penalties for non-compliance based on a failure to confer in "good faith." Because Plaintiffs have not shown that Defendants violated that tenet, the Court should reach the merits of all arguments asserted in the motion.

---

[5] Plaintiffs' opposition illustrates that a conference specifically addressing the claims for induced and contributory infringement would not have resulted in disposal of the issues given Plaintiffs have diametrically opposing views as to what pleading sufficiency requires. In this regard, requiring additional conference before reaching the merits would be futile. *See Berry v. Baca*, 2002 WL 1777412, *1 (C.D. Cal. July 29, 2002) (opposition to motion on grounds it does not comply with L.R. 7-3 was without merit where attempts to meet and confer would have been futile).

DOCUMENT PREPARED ON RECYCLED PAPER

### D. <u>The Court Should Deny Leave to Amend</u>

The Court should deny Plaintiffs' request to amend the complaint. In the Ninth Circuit, "[a]lthough leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

The Federal Circuit has addressed leave to amend in the context of Ninth Circuit jurisprudence and the § 101 inquiry. In *Sanderling Mgmt. v. Snap Inc.*, the Federal Circuit first affirmed the District Court's dismissal at Rule 12, holding that the claims were invalid under *Alice* Step One because they were directed to the abstract idea "of providing information — in this case, a processing function — based on meeting a condition, e.g., matching a GPS location indication with a geographic location." 65 F.4th 698, 703 (Fed. Cir. 2023) ("The claims of the asserted patents are not directed to a specific improvement in computer functionality but, instead, to the use of computers as a tool; here, a tool to identify when a condition is met and then to distribute information based on satisfaction of that condition."). Under Step Two, the Federal Circuit again affirmed, holding that the claims were merely "the application of the abstract idea using common computer components" and that the plaintiff failed to raise "any specific fact disputes." *Id.* at 705.

The Federal Circuit then found amendment futile. Like Plaintiffs here, Sanderling did not file a "proposed amendment" to the complaint with his response to the motion to dismiss under § 101; instead, Sanderling untimely filed the proposed amendment with a motion for reconsideration. *Id.* at 706. The Federal Circuit further found that even if the amendment had been timely filed, however, it would have been futile. "No amendment to a complaint can alter what a patent itself states." *Id.* Where the basis for ineligibility is the disclosure and language of the patent itself, any proposed amendment would merely "add conclusory statements that the claimed steps were not well-known, routine, and conventional. The district court [i]s not

DOCUMENT PREPARED ON RECYCLED PAPER

required to credit such conclusory allegations." *Id.*

Plaintiffs have not filed their proposed amendment to the complaint with its opposition to this motion to dismiss. They have not informed Defendants or the Court regarding what such amendment would contain. More importantly, the '683 Patent itself makes clear that no amendment could remedy the patent eligibility deficiencies. Accordingly, as in *Sanderling*, the Court should deny leave to amend and dismiss the Complaint with prejudice.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its motion and dismiss Plaintiffs' Complaint with prejudice for failure to state a claim under Rule 12(b)(6) because the claims of the '683 Patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101 and Plaintiffs have failed to properly plead indirect infringement.

*L.R. 11-6.1 Certification: the undersigned, counsel of record for Defendants,  hereby certifies that this brief contains 6,847 words, under the 7,000 word limit set by Local Rule.*

Dated:  February 11, 2026          **NORTON ROSE FULBRIGHT US LLP**

By: /s/ *Michael Solomita*
     MICHAEL SOLOMITA
     Attorneys for Defendants
     ROLAND CORPORATION, ROLAND
     CORPORATION U.S.

DOCUMENT PREPARED ON RECYCLED PAPER
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS